By the Court:
 

 Harrington,
 
 Justice.
 

 The first and second exceptions are cured by the appearance. The summons had no validity without the signature of the justice; yet, if the defendant obeyed it, he is not now to
 
 *66
 
 object to this informality. Neither does the summons state the cause of action properly, which is required for the purpose of giving the defendant notice of what he is called upon to answer; yet, if he appear and go into trial without objection, and without asking a postponement, it is evident that he is not taken by surprise, and he cannot object that the summons has not fully informed him of the nature of the claim against him. The appearance and going into trial cures these and most; other defects in the summons.
 

 But the third exception raises the question whether a justice of the peace has jurisdiction, without the intervention of fence viewers, in actions of trespass by cattle breaking through fences and destroying or damaging corn.
 

 The law on this subject is designed to fix a uniform rule in relation to the quality and sufficiency of fences, and to require of every man the use of due precaution and care to prevent trespasses by cattle. Its policy is not merely the protection of crops, but the encouragement also of the production of stock. It makes the owner of cattle liable for their trespasses in the enclosures of others, not as he would be liable for his own trespass, but only in case the person trespassed upon and damaged has used due precaution to prevent such damage, by enclosing his crops “with a post and rail fence, or worm fence well staked and ridered, at least four and a half feet high from the top of the upper rail or rider to the ground,” or with a worm fence five feet high without rider. It is obvious, therefore, that in cases of trespass by cattle, the party injured’must show that he has provided a lawful fence, or he will not be entitled to recover damages; and even where the fence is lawful, the act of assembly makes the owner of the cattle trespassing liable only to make good all such damages as shall be found and awarded by fence viewers, which the same act directs this court annually to appoint, in each hundred of the county. These fence viewers, or any three of them, are made by the law
 
 the sole judges
 
 of the sufficiency of all fences, and of the damages sustained by means of any creature’s trespassing.
 

 Thus far there is no pretence of jurisdiction in a justice of the peace to try a case of trespass by cattle, without the intervention of fence viewers; and the question is whether the first section of the act of 30th January, 1829, “concerning the jurisdiction of justices of the peace in certain actions of trespass” embraces this kind of trespass by cattle, and dispenses with the fence viewers in ascertaining the amount of the damage. That act gives jurisdiction “of actions of trespass for direct) and immediate injuries in carrying away or taking,
 
 *67
 
 destroying or .damaging goods or chattels, and for direct and immediate injuries to real property, when the damages claimed in such action do not exceed fifty dollars.”
 
 (Dig.
 
 259.)
 

 C.
 
 G. Ridgely,
 
 for exceptant.
 

 It is not probable that the Legislature intended by this act to embrace cases of trespasses by cattle, which before stood on a distinct ground, and were provided for by a system designed and' calculated to produce uniformity both in the quality of fences and in the assessment of damages. If such was the intention of the Legislature, it virtually repeals the several acts “for regulating fences within this government;” for no one will resort to the fence viewers preparatory to bringing suit, if he can at once commence . an action before the justice, as in other cases of trespass. But this act was evidently not designed to have such effect, because it does not either expressly or by implication repeal the fence laws, and its terms are satisfied though it be restricted to other actions of trespass than those by cattle, sheep and hogs, for it professes only to give jurisdiction in “certain actions of trespass.” Additionally the same Legislature, by the subsequent act of February 13, 1839, recognized all these fence laws as in full force, and directed that “all sums found and awarded by fence viewers, if the same do not exceed fifty dollars, may be recovered before a justice of the peace, proceeding according to the act “providing for the recovery of small debts,” and not even under the law giving jurisdiction to justices in trespass cases.
 

 These laws must be all construed together to work out a system. By such construction they can all have force^ and effect within their proper design; but taking them separately, they conflict with and contradict each other. According to the proper construction, the jurisdiction given to justices of the peace by the act of 30th January, 1829, “in certain actions of trespass,” extends only to such actions of trespass as are not provided for by the previous and subsequent acts “for regulating fences within this government.” And consequently that such justices have not jurisdiction, without the intervention of fence viewers, in cases of trespass by horses, cattle, sheep and hogs breaking through fences and damaging crops.
 

 On this ground, therefore, we reverse the judgment below.